RUCKMAN by her next friend, etc., *v.* RUCKMAN and others.

*(Circuit Court, D. New Jersey.* March 22, 1881.)

**1. DELIVERY OF DEED—EVIDENCE OF INTENTION.**

It is not necessary, in order to constitute a delivery of a deed, that it should be in fact handed over to the grantee, or to a person in trust for him; but, where there is no actual handing over of the deed, some act must be done, or word spoken, to indicate such an intent, in order to make it effectual.

**2. SAME—HUSBAND AND WIFE.**

*Held, therefore,* where a married man procured a mortgage to be taken in the name of a third person, and caused the same to be assigned to his wife, but retained possession and control of both the mortgage and assignment, that the mere promise to give the same to his wife did not constitute a delivery.—[ED.

In Equity. On Bill, etc.

NIXON, D. J. This is a suit for the foreclosure of a mortgage, originally brought in the court of chancery of New Jersey by Margaret Ruckman against James H. Marley, John F. Brylan, and the husband of the complainant, Elisha Ruckman, and removed into this court on the petition of the defendant Ruckman.*

The bill alleges that in the month of September, 1878, the defendant Marley applied to Elisha Ruckman for the loan of $5,000 on mortgage; that the loan was made, and in order to secure it the said Marley and wife executed a bond and mortgage to the defendant Brylan, bearing date September 28, 1878, and that shortly afterwards the said Brylan made and executed an assignment of the same to the complainant, whereby the title to the bond and mortgage became vested in complainant. It further sets forth that the bond, mortgage, and assignment were not in the possession of the complainant, but were in the possession of the defendants Ruckman and Brylan, or one of them; that she was entitled to the same, and the money due thereon, as her separate estate, and prays that Ruckman may be decreed to pass over to the complainant the original bond and mortgage, and assignment,

*See 1 FED. REP. 367; Id. 587.

if in his possession or under his control; that the same decree may be entered against Brylan, if they should be in his possession or under his control; and that Marley may be decreed to pay the mortgage debt and accrued interest to the complainant, and may be protected by the decree of the court from the bond and mortgage, if they should not be in the hands of the complainant to be surrendered and cancelled on the payment and discharge of the same.

The defendant Elisha Ruckman, in his answer, admits the loan of $5,000 by him to Marley, and the execution of the bond and mortgage to Brylan to secure the payment thereof; and also the execution of an assignment of the same to the complainant; but he claims that he retained the possession of the papers; that they were never delivered to the complainant; that no gift was made by him to her, nor intended to be made; and that after she deserted his bed and board, to-wit, about the tenth of March, 1879, he surrendered the assignment, which had been formally made to the complainant, to Brylan, to be destroyed, and also delivered to him the bond and mortgage, in consideration of which Brylan gave to him his promissory note for $5,000, payable in one year from September 27, 1878,—the date of the mortgage,—and that he had no further interest in the same. Although hundreds of pages of testimony have been taken, the only question in the case is whether the complainant is the owner of the bond and mortgage on which the suit is founded. If she is not, her action must fail, whoever else the owner may happen to be. And this question is determined when we ascertain whether the complainant has shown a sufficient delivery to render the assignment effectual to vest in her the title to the mortgage. The complainant herself has been examined, and I have carefully read her testimony upon this point. It falls short of the legal requirements in such a case. She does not pretend that the papers were ever in her possession or delivered to her. The most that she claims is that they were promised to her. The substance of her evidence is that Ruckman, her husband, told her on several occasions that he would make such a loan for her benefit; that he afterwards informed her he had done

so, and that the mortgage was hers, and that after their separation he promised to send it to her, but never did so.

It is not insisted that in order to constitute the delivery of a deed it is necessary that it should be in fact handed over to the grantee, or to a person in trust for him; but where there is no actual handing over of the deed some act must be done, or word spoken, to indicate such an intent, in order to make it effectual. Its mere execution, or putting it on record after execution, without the knowledge of the grantee, is not sufficient. Washburn says: "A delivery of a deed is as essential to the passing of an estate as the signing; and so long as the grantor retains the legal control of the instrument, the title cannot pass any more than if he had not signed the deed. \* \* \* So long as the deed is within the control of the grantor, and subject to his authority, it cannot be held to have been delivered." 3 Washb. R. P. 577, 580. To the same effect are the cases of *Crawford* v. *Berthoff*, Saxton, 467; *Folley* v. *Vantuyl*, 4 Hal. L. 158; and *Cannon* v. *Cannon*, 11 C. E. G. 319. I can find no evidence tending to show that the bond, mortgage, or assignment was ever out of the possession or control of the defendant Ruckman, or that he ever performed an act indicating an intent to make a delivery of them to the complainant. A naked voluntary promise is not enough to support a gift of a chattel, unless it is followed by some performance.

Failing to establish any title to the mortgage, the bill of complaint must be dismissed.